UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| GREGORY MARTIN., <br>    Movant, <br> <br>        v. <br> <br> UNITED STATES OF AMERICA, <br>    Respondent | ) <br> ) <br> ) <br> )   Crim. No.  2:18-cr-124-JDL <br> )   Civil No. 2:20-cv-405-JDL <br> ) <br> ) |

**GOVERNMENT'S RESPONSE TO MOTION PURSUANT TO 28 U.S.C. § 2255,
MOTION FOR SUMMARY DISMISSAL, AND MEMORANDUM OF LAW**

Gregory Martin. filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.  This memorandum is respectfully submitted in response to the Court's order that the Government answer Martin's motion.  The Government requests that the Court summarily dismiss the motion as lacking merit and refuted by the record.[1]

**Background**

On August 23, 2018, Gregory Martin was charged in a one count Indictment charging him with: Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. § 841(a)(1). (Dkt. #19). The charges stemmed from an incident on June 1, 2018. (Dkt. # 19). According to the prosecution version, on June 1, 2018, a Trooper with the Maine State Police observed a vehicle being operated in an erratic manner. (Dkt. #58).  The Trooper stopped the truck to determine whether the operator was impaired or distracted. *Id*. The passenger of the vehicle initially provided false identification but was eventually identified as Gregory Martin. *Id.* During the course of the traffic stop, a narcotics detection K9 was taken around the vehicle and indicated to the presence of narcotics in the vehicle and on Gregory Martin. *Id.* A search of the

---

[1] Citations herein are as follows: pleadings and events in the District Court docket as (Dkt. #); Martin's § 2255 petition as (Pet.).

vehicle was conducted and troopers located a large quantity of a white chunky substance concealed inside of a Lipton Ice Tea container in the trunk. *Id.* After receiving *Miranda* warnings, Martin admitted that he recently acquired the substance from a supplier in New York. *Id*. A laboratory confirmed the seized drugs contained 255.3 grams of cocaine base. PSR at 12.

On November 14, 2018, a motion to suppress was filed by Martin. (Dkt. # 36). Martin argued that traffic stop of the vehicle in which he was a passenger was an unreasonable search and seizure under the Fourth Amendment because there was no reasonable suspicion for stopping the vehicle, and all evidence discovered during the ensuing search of the vehicle must be suppressed.  Second, Martin argued that the traffic stop was unreasonably extended to allow for the dog sniff, and third Martin argued that the narcotics detection canine did not follow protocols and thus no probable cause existed to conduct a warrantless search of the vehicle. Lastly, he argued that because he did not receive *Miranda* warnings when he was initially handcuffed, any statements he made should be suppressed.

On April 30, 2019, the district court held a suppression hearing during which the government called two witnesses. (Dkt. 53). The first was Maine State Trooper John Darcy, who executed the stop of the truck in which Martin was a passenger, and the second was Maine State Trooper Jesse Duda, who conducted the canine sniff of Martin and the vehicle in which he was traveling. After the hearing, the district court (Levy, J) denied Martin's motion. (Dkt. #56.)

On July 1, 2019, Martin appeared before the court and pleaded guilty to the Indictment, absent a plea agreement. (Dkt. 61). Martin's plea was conditional in that it he reserved the right to appeal this Court's decision to deny his Motion to Suppress. (Dkt. # 60.) On March 2, 2020, this court sentenced Martin to 84 months of imprisonment, followed by 4 years supervised

release and a $100 special assessment.  Martin did not appeal his sentence or the district court's denial of his motion to suppress.   (Pet. at 3).

On October 29, 2020, Martin filed a § 2255 petition alleging newly discovered evidence. (Pet. at 4). In particular, Martin claims that he "became aware of a video that did not exist at the time of [his] initial suppression motion, of the officer in [his] case discussing stopping thugs who look like they are doing something wrong." (Pet. at 4.) While Martin's motion fails to state what he is specifically referring to, the government assumes Martin is referencing the case of *United States v. Terrel Walker*, 19-220-JDL, a case charged in the District of Maine that was subsequently dismissed on September 23, 2020. In that case, Trooper Darcy is overheard speaking to another trooper on the vehicle dashboard camera. This conversation occurs prior to Terrell Walker's vehicle being stopped for a traffic infraction. A transcript of the pertinent conversation is below:

> Trooper Darcy: Like if I see a white thug, I'm going to be interested, just like a black thug, or a fuckin' Chinese thug. Like, I'm interested in thugs, that's not racial profiling. Like some black guy goes by, and he's just some normal dude from Portland, like whatever. This guy kind of looks like a thug, to be honest with you.
>
> Other Trooper: You see the guy driving?
>
> Trooper Darcy: Yeah. He's wearing a wife-beater, he's got dreads, he looks like a thug, he may not be. And I'm not profiling him racially, because I don't care that he's white, black. White kid, neck tats all over him, fucking sideways hat, thug, you know what I mean. So like I get… I hate when people try to make it seem like that's what it is. I care about where people are from, and the way they seem, do you know what I mean? Like, do they seem like they could be involved in the drug game, or gangs, you know what I mean? I don't give a fuck whether they are black or white, like… And I like saying this, Nicole has a niece who is half black, I'll tell someone like, my niece is half-black, don't play that racial shit with me.

Following this conversation, Trooper Darcy stopped the vehicle for a lane violation, a canine responded, and Walker was found in possession of drugs and a loaded firearm. The incident that led to Walker's vehicle being stopped and subsequent arrest occurred on August 15, 2019, in York, Maine, approximately forty-six days after Martin had already pled guilty.

**Decisional Framework**

Title 28 U.S.C. § 2255 sets forth four potential bases upon which a federal prisoner may seek relief: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Petitioners have one year from any of four triggering events to file a claim for relief under § 2255(a): (1) "the date on which the judgment of conviction becomes final"; (2) "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed"; (3) "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"; or (4) "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f).

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides that, "If it plainly appears from the motion...and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion...." *See also Barrett v. United States*, 965 F.2d 1184, 1195 (1st Cir. 1992); *United States v. Michaud*, 925 F.2d 37, 39 (1st Cir. 1991). A petitioner bears the burden to make a case for § 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). The burden is also on the petitioner to show entitlement to an evidentiary hearing. *See United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). "Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is

warranted." *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003). Where the § 2255 petition is presented to a court already familiar with the defendant, the court "is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *McGill*, 11 F.3d at 225.

## Argument

Martin raises one constitutional claim in his § 2255 petition. His claim for collateral relief is based primarily on what he alleges is newly discovered evidence related to his motion to suppress that was denied by the district court. As stated above, Martin contends that a dashboard camera video of Trooper Darcy speaking to another trooper during a traffic stop that took place some 46 days after Martin had already pled guilty should permit him to withdraw his guilty plea because it was "not a knowingly *(sic)* and voluntary plea." (Pet. at 7.) The Court should dismiss Martin's petition because his claims are procedurally defaulted, and/or meritless.

### A. Martin's Claim is Procedurally Defaulted

This court should dismiss Martin's petition because he procedurally defaulted his claims by failing to raise them on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *see also United States v. Frady*, 456 U.S. 152, 167–68 (1982), *Berthoff v. United States*, 308 F.3d 124, 127–28 (1st Cir. 2002). "If a petitioner's claim has procedurally defaulted, collateral review under § 2255 will be available only if the petitioner can show both (1) 'cause' for having procedurally defaulted his claim; and (2) 'actual prejudice' resulting from the alleged error." *Bucci v. United States*, 662 F.3d 18, 27 (1st Cir. 2011) (*citing Frady*, 456 U.S. at 167–68). Alternatively, procedural default may be excused if the petitioner can make a "strong" showing of "actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013).

Martin makes no effort in his petition to show cause for his failure to challenge the district court's denial of his motion to suppress. In fact, in his petition, Martin concedes that he didn't appeal the district court's decision because he didn't have any evidence to support his claim. (Pet. at 3.) This court should find that Martin lacked cause for his procedural default.

Nor has Martin demonstrated actual innocence with respect to his claims of error. For the actual innocence exception to apply, a petitioner must support his claim with new reliable evidence not previously presented. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. Martin does not dispute he possessed the 255.3 grams of cocaine base recovered from the car in which he was a passenger, or that he acquired the cocaine base from his supplier in New York, or that he intended to distribute it in Maine. Rather, Martin claims that statements made by Trooper Darcy in an unrelated case forty-six days after he pled guilty made his plea not knowing and voluntary. Martin did not contest the facts of the prosecution version of the offense at the time of his plea, he did not object to any of the facts of the Revised Presentence Report related to his arrest on June 1, 2018, and he has made no showing of actual innocence with respect to any of his claims.

### B.   Martin's Fourth Amendment Claims Not Cognizable Under § 2255

Constitutional claims are generally cognizable under § 2255. But in *Stone v. Powell*, the Supreme Court held that Fourth Amendment claims ordinarily cannot be heard on state habeas corpus review. 428 U.S. 465, 494 (1976).[2] After noting that "[t]he exclusionary rule was a

---

[2] Although *Powell* involved a state prisoner's habeas petition under § 2254, most federal appellate courts apply it to §2255 cases. *See Lee Vang Lor*, 706 F.3d at 1257; *Ishmael*, 343 F.3d at 742; *United States v. Cook*, 997 F.2d 1312, 1317 (10th Cir. 1993); *United States v. Hearst*, 638 F.2d 1190, 1196 (9th Cir. 1980). In *United States v. Johnson*, the Supreme Court appeared to validate this conclusion, assuming that *Powell* applied to "federal habeas corpus cases" and "federal cases under 28 U.S.C. x 2255" alike. 457 U.S. 537,

6

judicially created means of effectuating the rights secured by the Fourth Amendment," *Powell* "weigh[ed] the utility of [that rule] against the costs of extending it to collateral review of Fourth Amendment claims," and found that "the additional contribution, if any, of the consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the costs." *Id*. at 482, 489, and 493. Accordingly, *Powell* concluded that such claims could be heard in *habeas corpus* only if the petitioner lacked a "full and fair" opportunity to litigate them in state court. *Id*. at 482, 486, and 494. A defendant does not necessarily lack a "full and fair" opportunity to have his claim heard merely because further evidence of a Fourth Amendment violation surfaces after his motion is denied. *See United States v. Lee Vang Lor*, 706 F.3d 1252, 1259 (10th Cir. 2013) ("Absent ineffective assistance of counsel or government concealment, a defendant cannot claim that the mere existence of undiscovered material evidence deprived him of an opportunity to litigate his claim."); *Brock v. United States*, 573 F.3d 497, 501 (7th Cir. 2009) (same). Nor does an intervening change in the law, standing alone, suffice to overcome the bar. *See e.g., United States v. Ishmael*, 343 F.3d 741, 742–43 (5th Cir. 2003) (*noting Kyllo v. United States*, 533 U.S. 27 (2001) did not negate *Powell*'s applicability); *Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir. 1986) ("[A]n erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell bar*.").

Martin's petition fails to provide any proof that he lacked a full and fair hearing on his motion to suppress.  Martin was provided an opportunity to cross-examine Trooper Darcy and Trooper Duda and at the conclusion of that hearing the Court denied Martin's motion to suppress on all grounds raised.  Martin's claim that the dashboard video of an unrelated incident that took

---

562 n.20 (1982). Nonetheless, the Eighth Circuit does not apply *Powell* to section 2255 motions, reasoning that "the supervisory power of federal appellate courts over district courts is broader than its authority to review state court decisions under [Section] 2254." *Baranski v. United States*, 515 F.3d 857, 860 (8th Cir. 2008).

7

place more than a month after he had already pled guilty, and more than a year after he had been arrested by Troopers Darcy and Duda, would have changed the outcome of that hearing is meritless. The Court should deny Martin's petition because a § 2255 collateral attack is not the venue to contest the court's decision to deny the defendant's motion to suppress absent the exceptions outlined in *Powell* for which Martin has not provided any evidence.

### C. Martin's Claims Fail on Their Merits

Setting aside any procedural hurdles and assuming that Martin's claims are both timely and not defaulted, this Court should deny his petition as substantively without merit. Martin's petition does not explain how the "newly discovered evidence" of Trooper Darcy's video from August 2019 would have changed the factfinder's decision with respect to his motion to suppress evidence and statements, or how the newly discovered evidence undermined his plea of guilt. The video recording of Trooper Darcy on August 15, 2019, is not exculpatory of Martin's conduct on June 1, 2018 and thus not anything the government was obligated to produce. Furthermore, as discussed, *infra,* Martin pled guilty more than a month prior to the video of Trooper Darcy's comments and the statements of Trooper Darcy were, at best, possible impeachment information.

Even if Trooper Darcy's comments had been made prior to Martin's guilty plea, Martin waived his trial right to impeachment evidence when he plead guilty. In *United States v. Ruiz*, 536 U.S. 622 (2002), the United States Supreme Court held that the Fifth and Sixth Amendments to the United States Constitution do not require "the government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." 536 U.S. at 633. With its holding, the Court flatly rejected the notion that a guilty plea is involuntary "unless the prosecutors first made the same disclosure of material impeachment information that the

prosecutors would have had to make had the defendant insisted upon a trial." *Id*. at 629. The Court in reaching its decision reasoned that "impeachment information is special in relation to the fairness of a trial, not in respect to whether a plea is voluntary." *Id*. In the instant case, the Government could not have provided the August 2019 video of Trooper Darcy prior to Martin's guilty plea because the incident had not yet taken place.

## **Conclusion**

For all of the foregoing reasons, the government respectfully submits that the claims asserted in Gregory Martin's motion to vacate are completely without merit and are properly rejected in their entirety.

Respectfully submitted,

HALSEY B. FRANK
United States Attorney

Dated January 19, 2021

/s/ Johnathan G. Nathans
Johnathan G. Nathans
Assistant U.S. Attorney
United States Attorney's Office
100 Middle Street, East Tower, 6th Floor
Portland, ME 04101
Johnathan.Nathans@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2021, I electronically filed the foregoing Government's Response In Opposition To Motion to Vacate, Set Aside or Correct sentence Pursuant to 28 U.S.C. § 2255 with the Clerk of Court using the CM/ECF system, and will send notification of such filing, via U.S. Mail, to the following:

Gregory Martin
13391-036
FCI Schuylkill
FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 759
Minersville, PA 17954

/s/ Johnathan G. Nathans
Johnathan G. Nathans
Assistant U.S. Attorney