UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| GREGORY MARTIN, )<br>)<br>Petitioner )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent ) | 2:18-cr-00124-JDL<br>2:20-cv-00405-JDL |

## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

Petitioner moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. (Motion, ECF No. 100; Supplemental Motion, ECF No. 123.) Following a guilty plea, Petitioner was convicted of possession with intent to distribute cocaine base; the Court sentenced Petitioner to eighty-four months in prison. (Judgment, ECF No. 79.)

Petitioner contends the Government failed to provide information it was required to disclose before his sentencing. (Motion at 5–8; Supplemental Motion at 10–21.) The Government requests dismissal. (Response, ECF No. 113; Supplemental Response, ECF No. 126.)

Following a review of the record and after consideration of Petitioner's motions and the Government's request for dismissal, I recommend the Court grant the Government's request, deny Petitioner's request for relief, and dismiss Petitioner's motions.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 2, 2018, a Maine State Police trooper stopped on the highway a vehicle with out-of-state license plates in which vehicle Petitioner was a passenger. (Affidavit of

Agent Ford, ECF No. 1-1.) After another officer arrived at the scene, a K9 alerted to the presence of narcotics in the car and on Petitioner, the officers located white powder they suspected was cocaine base, and the officers arrested Petitioner. (*Id.*) In August 2018, Petitioner was indicted on one count of possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 846 and 841(a)(1). (Indictment, ECF No. 19.) Petitioner moved to suppress the evidence collected as a result of the traffic stop; the Court denied the motion on June 6, 2019, after a hearing in which the Court heard testimony from the two officers. (Order on Motion to Suppress, ECF No. 56.) On July 1, 2019, Petitioner pled guilty to the charge. (Change of Plea Hearing, ECF No. 61.) On March 2, 2020, the Court sentenced Petitioner to eighty-four months of imprisonment. (Judgment, ECF No. 79.) Petitioner did not file an appeal.

    Meanwhile, in August 2019, the officer who stopped the vehicle in which Petitioner was a passenger stopped a different individual who was eventually charged with federal crimes. Petitioner contends that a dashcam recording of that encounter revealed that when talking with another officer, the officer who stopped Petitioner's vehicle discussed racial profiling and made statements that were material to an assessment of the officer's testimony at the hearing on Petitioner's motion to suppress. Petitioner argues that "[t]he statements by [the officer], where he boasts of stopping vehicles based on subjective interpretations of the appearance of individuals, would have cast doubt on the veracity of his claims that the vehicle containing [Petitioner] committed any driving infraction." (Supplemental Motion at 14.) The recording came into the Government's possession in September 2019, the other individual was charged with a federal crime in November 2019,

2

and the charges were dismissed in September 2020. (Government's Supplemental Response at 3, ECF No. 126; Motions, Order of Discharge, *United States v. Walker*, 2:19-cr-00220-JDL-1, ECF Nos. 55–59, 67.) Petitioner learned of the recording and filed his § 2255 motion in October 2020.

## DISCUSSION

### A. Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

*"[P]ro se* habeas petitions normally should be construed liberally in petitioner's favor." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127–28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte*." *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default if a petitioner demonstrates that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). A petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test because a failure to meet either prong will undermine the claim. *Id.* at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or

4

on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

Under the law of the case doctrine, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (internal modifications and quotation marks omitted); *see also Elwell v. United States*, 95 F.3d 1146, 1996 WL 516138 at *5 (1st Cir. 1996) (holding that a petitioner "is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law"); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) (collecting cases and explaining limited exceptions).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).

Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). A court can reasonably require a petitioner to supply the court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

5

**B.     *Brady* Claim**

The Government's contention that the recording "was not exculpatory or impeaching, and therefore not material, because the [recording], created over a year after [Petitioner]'s arrest, was not relevant or favorable to [Petitioner]" (Response at 3), is unavailing.  Upon review of the recording, a factfinder could reasonably conclude that prior to the time of the recording, the officer, as Petitioner contends, stopped "vehicles based on subjective interpretations of the appearance of individuals" rather than reasonable suspicion of a crime.  (Supplemental Motion at 14.)  The recording is plainly evidence that Petitioner could have used to attempt to impeach the officer's credibility and thus potentially undermine the officer's testimony regarding the reasons for the traffic stop.  The dispositive issue for the Court on Petitioner's motions, however, is not the materiality of the officer's statements.  The issue is whether the Government's decision not to provide Petitioner with the recording after Petitioner pled guilty but before sentencing constitutes a violation of the Government's obligation under *Brady v. Maryland*, 373 U.S. 83 (1963).

While there is no general right to discovery in a criminal case, the suppression of evidence favorable to the defendant violates due process "where the evidence is material either to guilt or punishment," *Id*. at 87, including impeachment evidence of key government witnesses. *Giglio v. United States*, 405 U.S. 150, 154 (1972). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

6

Because *Brady* and its progeny describe a constitutional right created "as part of its basic 'fair trial' guarantee," and because a guilty plea waives several constitutional rights including a defendant's right to a fair trial, "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 628, 633 (2002). "*Ruiz* teaches that *Brady* does not protect against the possible prejudice that may ensue from the loss of an opportunity to plea-bargain with complete knowledge of all relevant facts. This makes good sense: when a defendant chooses to admit his guilt, *Brady* concerns subside." *United States v. Mathur*, 624 F.3d 498, 507 (1st Cir. 2010). Here, because Petitioner voluntarily pled guilty to the offense before the events in the recording occurred and before the Government obtained the recording, the Government did not improperly withhold the evidence and did not violate Petitioner's right to a fair trial.[1]

Petitioner nevertheless argues the Government should have disclosed the evidence before sentencing even though it was not relevant to any sentencing issues so that Petitioner could have withdrawn his guilty plea, reopened the suppression hearing, and offered the evidence of the recording to impeach the officer's testimony. Petitioner's argument is

---

[1] While *Ruiz* and *Mathur* acknowledge the diminished *Brady* concerns when a defendant decides to admit guilt, some courts have found that under certain circumstances, a defendant can assert a postconviction *Brady* claim even when the defendant pled guilty. For instance, in *United States v. Ohiri*, 133 F. App'x 555 (10th Cir. 2005), where the petitioner pled guilty to a criminal charge, the Tenth Circuit concluded that the district court erred when it denied the petitioner's request to amend his § 2255 motion to allege a *Brady* claim based on the Government's failure to disclose material information prior to the plea. The appellate court distinguished *Ruiz*, noting that the evidence in *Ohiri* was exculpatory and that the plea occurred on the day the parties were scheduled to select a jury. *Id.* at 562. The reasoning in *Ohiri* does not support a *Brady* claim in this case. Here, none of the material factors in *Ohiri* is present. The evidence is impeachment, not exculpatory, and the parties reached a plea agreement nearly three weeks before the start of the trial term. (Notice of Hearing, ECF No. 57.) Furthermore, the evidence in *Ohiri* was evidently available to the Government before the plea.

unpersuasive. First, it would be incongruous if the Government had a duty to disclose impeachment evidence after a guilty plea when, under *Ruiz*, the Government is not obligated to disclose impeachment evidence before a guilty plea. Second, even if the Government had disclosed the recording before sentencing, Petitioner would not necessarily be entitled to withdraw his guilty plea. *See United States v. Benson*, No. 2:19-CR-122-DBH-01, 2020 WL 2738218, at *3 (D. Me. May 26, 2020) ("When Benson pleaded guilty, he was foregoing his trial rights, including the right to see impeachment material. In other words, he was giving up his chance to test the strength of the government's case. The fact that he later discovered information he might have used at trial does not constitute a good reason for withdrawing his guilty plea").[2]

In sum, Petitioner's *Brady* claim fails and he is not entitled to relief on his § 2255 motions.[3]

---

[2] The burden for reopening a suppression hearing before a plea or trial is different than the burden a defendant must meet before being permitted to withdraw a guilty plea. In *United States v. Fagan*, 2:19-cr-00123-DBH-1, before trial or a guilty plea, the parties consented to the reopening of the suppression hearing after the Government disclosed the same recording at issue here. (2:19-cr-00123-DBH-1, ECF Nos. 118, 155, 171.) If Petitioner had not already pled guilty before the other traffic stop occurred and the Government produced the recording under *Brady* and *Giglio* in preparation for Petitioner's trial in this case, as it evidently did in *Fagan*, Petitioner presumably would have moved to reopen the suppression hearing. Unlike the defendant in *Fagan*, however, Petitioner had already voluntarily and knowingly admitted his guilt before the other traffic stop occurred, and the recording would not necessarily provide a basis to withdraw his guilty plea. *See Benson*, 2020 WL 2738218, at *3 (rejecting defendant's argument "that because he now has impeachment material calling the witness's truthfulness into question, evidence he did not have when he pleaded guilty, he should essentially get a do-over and be permitted to go to trial").

[3] Petitioner frames his *Brady* claim in several additional ways, including by arguing that his guilty plea was involuntary, but the alternate framing also fails for essentially the same reasons. For example, Petitioner argues the *Brady* right attached at the suppression hearing, and that once it attaches, the Government's duty is ongoing and persisted until sentencing. There is little authority for Petitioner's argument. Two circuits recognize a *Brady* right at the suppression hearing stage, *United States v. Barton*, 995 F.2d 931, 935 (9th Cir.1993); *Smith v. Black*, 904 F.2d 950, 965–66 (5th Cir.1990), *vacated on other grounds*, 503 U.S. 930 (1992), but the precedents pre-date *Ruiz*. Other circuits have cast doubt on the existence of any *Brady* rights at the suppression hearing stage because the suppression proceedings protect fourth amendment rights, not

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. In addition, I recommend that the Court deny Petitioner's motions for habeas relief under 28 U.S.C. § 2255 and dismiss Petitioner's motions. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered

---

the Fifth and Sixth amendment right to a fair trial. *See United States v. Bowie*, 198 F.3d 905, 912 (D.C. Cir. 1999) ("[I]t is hardly clear that the *Brady* line of Supreme Court cases applies to suppression hearings. Suppression hearings do not determine a defendant's guilt or punishment, yet *Brady* rests on the idea that due process is violated when the withheld evidence is 'material either to guilt or to punishment'"); *United States v. Bullock*, 130 F. App'x 706, 723 (6th Cir. 2005) (quoting *Bowie*); *United States v. Lee Vang Lor*, 706 F.3d 1252, 1256 n.2 (10th Cir. 2013) (noting split but declining to weigh in); *United States v. Thomas*, 835 F.3d 730, 734 (7th Cir. 2016) (same).

To the extent Petitioner's arguments could be construed as a Rule 33 motion for a new trial based on newly discovered evidence, his guilty plea forecloses that option. *United States v. Graciani*, 61 F.3d 70, 78 (1st Cir. 1995) ("By its express terms, Rule 33 is confined to those situations in which a trial has been had. In the court below, appellant admitted his guilt, abjuring a trial. A defendant who enters a guilty plea cannot thereafter use Rule 33 as a wedge to undo his acknowledgement that he committed the offense"). To the extent that § 2255 may offer a similar avenue to those who pled guilty, *see Moreno-Morales v. United States*, 334 F.3d 140, 149 (1st Cir. 2003) (assuming without deciding that newly discovered evidence claims may be brought under § 2255), that argument fails because the recording could be used to impeach one officer's testimony but does not undermine the other evidence available, and impeachment evidence is generally insufficient to establish the required elements of materiality and prejudice. *See United States v. Peake*, 874 F.3d 65, 69 (1st Cir. 2017) (In order to succeed on a motion for a new trial based on newly discovered evidence, a defendant "must show that the specified evidence was unknown or unavailable to him at the time of trial; that the failure to discover such evidence was not the result of his lack of diligence; that the evidence is material and not merely cumulative *or impeaching*; and that the evidence is such that its introduction would probably result in an acquittal upon a retrial of the case") (quotation marks omitted) (emphasis supplied). To the extent Petitioner asserts newly discovered evidence of a Fourth Amendment violation, as opposed to newly discovered evidence of innocence, that claim is not cognizable on postconviction review. *See Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (Fourth Amendment exclusionary rule claims are not cognizable in § 2255 proceedings); *Arroyo v. United States*, 195 F.3d 54, 55 (1st Cir. 1999) (noting that "[t]he Supreme Court has hinted that *Stone v. Powell* applies to section 2255 petitions" but declining to resolve the issue).

pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 18th day of October, 2021.